J-A09025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| OIL CITY HOSPITALITY, T/A DAYS INN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1171 WDA 2025 |
| AMALGAMATED INSURANCE UNDERWRITERS, LLC | : | |

Appeal from the Order Entered August 18, 2025
In the Court of Common Pleas of Venango County Civil Division at No(s):
2023-00507

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED:  June 15, 2026**

Oil City Hospitality, T/A Days Inn ("Oil City") appeals from the order granting the summary judgment motion filed by Amalgamated Insurance Underwriters, LLC ("Amalgamated"). It argues Amalgamated was its insurer and it therefore could assert the breach of contract and bad faith claims alleged in the complaint against Amalgamated. We affirm.

Oil City owned a Days Inn Hotel in Oil City, Pennsylvania. In February 2021, its property suffered significant water damage. The parties agree that at the time, Oil City was insured by an insurance policy at policy number 2P7920 12048 ("the policy") and that the effective dates of the policy were from November 20, 2020, to November 20, 2021. However, "[n]either party produced a copy of the policy or any policy documents spelling out the terms,

conditions, and coverage provided for under the insurance contract." Trial Ct. Op., filed Aug. 18, 2025, at 1-2.

Oil City communicated with Amalgamated when applying for the insurance. Oil City alleged that Amalgamated was an insuring entity who, in the regular course of business and as an insurer, issued the policy to Oil City. Amalgamated countered that it was a representative of insurance carriers and it did not issue the policy, adjust the insurance, or make determinations about coverage. It alleged Oil City was insured by providers not named in the action.[1]

_____

[1] Amalgamated claimed Oil City was insured under a tower insurance program "where multiple insurance carriers integrated their policies to cover multiple insureds under one singular policy," which it described as follows:

> [Oil City] was insured under a multi-layered property insurance coverage arrangement that provided coverage for [Oil City's] property as well as various other commercial properties owned by other insureds. The policy consisted of a tower of insurance coverage comprised of numerous insurance policies which were issued by a number of participating insurance carriers. The program was issued by [Amalgamated's] affiliates, Amalgamated Hospitality Management, LLC and Amalgamated Hospitality Management II, LLC, as first named insured. The policy also provided a mechanism for additional named insureds to be included in the policy. Through this mechanism, other property owners could be added to the Program policies and obtain insurance coverage for their properties, which were typically hospitality-industry properties such as hotels, motels, and resorts. [Oil City] was included in the policy as an additional named insured.

Trial Ct. Op. at 3 (quoting Def.'s Br. in Supp. of Mot. for Summ. J., filed Dec. 13, 2024, at 5).

The following are relevant documents from the application process transmitted between Amalgamated and Oil City:

- The "Hospitality Program – Binding Requirement" and "Hospitality Supplemental," which were on Amalgamated letterhead and included Oil City's information required for the application. Pl.'s Resp. in Opp'n To Def.'s Mot. for Summ. J., filed, Jan. 30, 2025, at Exs. 3, 4.

- A "Hotel/Motel Property Appetite Guide," which states that "[Amalgamated], along with its carrier partners manage an exclusive, niche property insurance program underwritten by a group of 'A' rated domestic and London based carriers" and an "Amalgamated Hospitality Management Coverage Comparison" comparing Amalgamated's coverage to standard coverage. *Id.* at Exs. 5, 6.

- An inspection report from a company Amalgamated hired to inspect Oil City's property as part of the application process. *Id.* at Ex. 8.

- The Evidence of Commercial Property Insurance, provided by Amalgamated to Oil City, which lists Amalgamated as the "Producer" and "program manager." *Id.* at Ex. 2. At the top of the document, in bold, capitalized print, it says the document is evidence that commercial property insurance had been issued "as a matter of information only" and that it did "not constitute a contract between the issuing insurer(s), authorized representative or producer, and the additional interest." *Id.* (emphasis removed).

- A Declarations page that lists Amalgamated Hospitality Management Cell Company at the top and Amalgamated Hospitality Management LLC as the insured and describes the participating program as: "The property program written by various insurance companies including this one that in aggregate form a tower of coverages for members of the Amalgamated Hospitality LLC Group." *Id.* at Ex. 7.

- The Master Policy, which lists Amalgamated Hospitality Management II, LLC as the insured and has "Master Policy" displayed diagonally across each page. The policy included that claims should be submitted to Amalgamated. *Id.* at Ex. 11. Amalgamated's representative testified at his deposition that the Master Policy was a compilation of the insurance policies that "best represent[ed] their policies." *Id.* at Ex. 12 at 49. He stated that it was the way Amalgamated "notifie[d] potential insureds of what kind of coverages they can receive upon . . . joining th[e] program." *Id.* at 57. He stated it was not the policy, but a "selling point of what is the value of [the] program, what are the coverages." *Id.* at 56-57.

After the February 2021 property loss, Oil City submitted a property loss notice through its insurance agent. Def.'s Mot. for Summ. J., filed Dec. 13, 2024, at Eh. 3 at ¶ 17, Ex. 3-A. That notice listed the "Carrier" as "Ategrity Specialty Insurance Company." *Id.* at Ex. 3-A. After Amalgamated was made aware of the loss, it forwarded the claim to McLarens, an independent

administrator.[2] In April 2021, McLarens issued a letter informing Oil City the loss was not covered under the policy. The letter stated McLarens was the adjuster of Oil City's policy and appointed by "Interested Underwriters," and listed "Amalgamated Incorporated Cell Company, Ategrity, Hudson, Allied, Rokstone and Arch Bermuda" as the commercial insurance providers. *Id.* at Ex. 3 at ¶ 19,Ex. 3-B. It also included claim numbers for the following Underwriters: Captive, Ategrity (DBB), Ategrity (primary), Allied, Hudson, Rokstone, and Arch. The letter reported that the results of the investigation indicate that the property loss was possibly due to frozen and burst pipes and that the building had been left vacant for an extended period prior to the loss. *Id.* at Ex. 3-B. McLarens then identified Section III (A) of Policy # 01-B-DB-P00000987-1, provided by Ategrity, that excludes coverage for damage suffered while the property is left vacant for more than 60 days. *Id.* Accordingly, McLarens found that the loss was not covered by the policy. It copied Amalgamated on the email.

In August 2021, Oil City instituted this suit against Amalgamated. Oil City asserted three causes of action—breach of the "terms of the contract" for failing to indemnify Oil City's losses; a claim pursuant to 42 Pa.C.S.A. § 8371 for acting in bad faith under the terms and conditions of the insurance

---

[2] In its answers to interrogatories, Amalgamated stated that "Amalgamated and interested underwriters retained McLaren's to inspect [Oil City]'s property in connection with this loss." Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J., at Ex. 16, at 9, ¶ 20.

contract; and a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[3]

Amalgamated filed an answer and new matter. In the answer to the complaint, it admitted it "act[ed] as a representative of the insurers underwriting [the] policy" but denied it "regularly issue[d] policies within the City and County of Philadelphia." Answer at ¶ 2. It also denied issuing the policy to Oil City. *Id.* at ¶ 3. In the New Matter, Amalgamated included reasons the loss was not covered, but also stated that "any determination to afford or deny coverage under the Policy [was] not made by [Amalgamated]," and that the claims were barred for failure to join indispensable parties. New Matter at ¶¶ 18-19.

During discovery, in its response to interrogatories, dated April 2022, Amalgamated stated "Amalgamated does not insure [Oil City']'s property as Amalgamated is not an insurance carrier and refers to the relevant, non-privileged portion of the Documents attached to the accompanying production in response to [Oil City's First set of Request for Production of Documents." Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. at Ex. 16, at 5, ¶ 5.

In December 2024, Amalgamated filed the instant Motion for Summary Judgment and Brief in Support of Summary Judgment. Oil City filed a response and a brief in opposition to Amalgamated's Motion for Summary Judgment. The court held a hearing on the motion. At the time of the hearing, the parties

_____

[3] The court granted summary judgment as to all three claims. Only the breach of contract and bad faith claims are at issue in this appeal.

had not yet completed discovery. In March 2025, the trial court issued an order that found it could not rule on Amalgamated's Motion for Summary Judgment prior to the close of discovery and scheduled an additional argument. In April 2025, after the close of discovery, the court held a second hearing.[4] At the hearing, Oil City made an oral motion to extend discovery and the Court granted the motion and extended discovery. After a third hearing in July 2025 and the filing of supplemental briefing, the court granted Amalgamated's summary judgment motion. Oil City appealed.

Oil City raises the following issues:

1. Whether the Trial Court misapplied the summary judgment standard by closely scrutinizing and improperly weighing the evidence presented in order to resolve a factual dispute in the record over [Amalgamated's] status as a party to the Policy.

2. Whether the Trial Court erred as a matter of law by overlooking evidence set forth by [Oil City] tending to support [Amalgamated's] status as a party to the insurance Policy at issue.

3. Whether the Trial Court erred as a matter of statutory interpretation in finding that a claim for bad faith cannot lie against [Amalgamated], an entity which conducts an

_____

[4] In July 2025, Oil City filed a motion to enforce subpoenas, stating it had "serv[ed] subpoenas to produce documents or things related to discovery upon multiple entities," including Ategrity Specialty Insurance Company, Allied World Assurance Company, Inc., Hudson, Allied World Surplus Lines Insurance Company, and McLaurens. Mem. Of Law in Supp. of Mot. to Enforce Subpoenas Against Multiple Served Entities, filed July 1, 2025, at 1-2. The court denied this motion, finding Oil City "failed to comply with Pennsylvania Rules of Civil Procedure and Title 42 Pa.C.S.A. § 5531 et seq" and "the appropriate jurisdiction for enforcement of a foreign subpoena is in the foreign jurisdiction." Order, filed July 8, 2025.

insurance business in this Commonwealth. ***See*** 40 P.S. § 221.3.

Oil City's Br. at 8.

Oil City challenges the grant of summary judgment. "[S]ummary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." ***Nicolaou v. Martin***, 195 A.3d 880, 891 (Pa. 2018) (citing Pa.R.C.P. 1035.2(1)). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." ***Id.*** We "reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." ***Id.*** at 892. Our standard of review is *de novo* and our scope of review is plenary. ***Id.***

Oil City's first two issues address whether the court erred in granting summary judgment on the breach of contract claim. We will address them together. Oil City argues that it purchased from Amalgamated a policy of commercial property insurance, it submitted a claim under the policy, and Amalgamated retained a third party to adjust the claim. It maintains the third party wrongfully determined the claim was not covered and therefore Oil City brought the current action. It argues Amalgamated "is undoubtedly the proper party against whom [its] claims lie." Oil City's Br. at 17.

Oil City maintains that the primary dispute—whether Amalgamated was in a contractual relationship with Oil City—was a factual dispute and that the

court misapplied the summary judgment standard when it decided this factual issue. It maintains that, because the contract was absent from the record, disputes should have been considered by a jury, "who can hear testimony related to the intentions and beliefs of the parties." *Id.* at 21. It argues that here, "where the parties reasonably disputed [Amalgamated's] role in the Policy, and where the Policy was not available for the Court's inspection, the [c]ourt's resolution of the case necessarily 'cho[se] among reasonable inference[s] to be drawn from extrinsic evidence' related to [Amalgamated's] status." *Id.* at 22 (some alterations in original; emphasis omitted). It claims it presented circumstantial evidence that Amalgamated was the entity insuring Oil City and Amalgamated could have produced the policy. Oil City maintains the court should not have resolved the factual dispute.

Oil City also maintains that even if the court could resolve the contractual status, it failed to properly weigh the evidence. It claims the court did not view the evidence in the light most favorable to Oil City, as the non-moving party. Oil City maintains it attempted to show it had not received from Amalgamated any documentation of the insurance policy and argues that even without the policy, the record contained evidence of contractual privity between the parties. It claims privity is established by the "Evidence of Commercial Property Insurance," that names Oil City as the named insured and the box where an insurer would be listed includes only Amalgamated. It argues that "it would be hard to fathom why [Amalgamated] would have created and sent to [Oil City] a document constituting 'Evidence of Commercial

Property Insurance'" if a contract had not been formed. *Id.* at 26. It further notes that the document contained a box where Amalgamated could have, but did not, list other insurance companies.

Oil City also argues it established the terms of the policy through the "Master Policy." It states that Amalgamated's representative testified the Master Policy "best represents" the terms of coverage for new insureds who participate in the program. *Id.* at 27. It maintains the representative gave different versions of the timing of the transmission of the document, which it says should be an issue for the jury. It claims that the representative said that the policies were "similar, if not identical" and therefore the Master Policy should be evidence of the terms. *Id.* at 28-29. Oil City claims the Master Policy also provides evidence of Amalgamated's role in handling claims, arguing the claims had to be submitted to Amalgamated. It argues that "[s]uch involvement in the claim provides a reasonable basis on which a jury could infer . . . [Amalgamated] was [Oil City's] Insurer." *Id.* at 30.

Oil City attempts to distinguish *Lockhart v. Federal Insurance Company*, No. CIV. A. 96-5330, 1998 WL 151019, at *1 (E.D. Pa. 1998), on which the trial court relied. It argues that here, the court did not have a document identifying the party that agreed to provide Oil City insurance coverage. It claims because no party admits issuing the policy, the case is different from *Lockhart*. It argues that Amalgamated's letterhead here is relevant to determining the identity of the insurer, where no party admits to being the insurer, and the court erred in dismissing the use of the letterhead

based solely on **Lockhart**. Oil City similarly argues that alter ego status is irrelevant because no party admitted to being the insured. It claims it presented sufficient evidence from which a jury could infer that Amalgamated was the insurer.

Oil City next argues that the denial letter does not outweigh the policy-based evidence. It maintains the denial letter references a policy number that does not match its policy number. It argues that the letter was written on behalf of "interested underwriters . . . who provide commercial property coverage," but does not establish that any one of the companies acted as the insurer under the policy. Oil City also states that the letter provides two different lists of insurers—one in the introductory paragraph and one in the schedule of insurers. Oil City argues Amalgamated retained McLarens and McLarens, as an adjuster, did not owe a contractual or tort-based duty to Oil City. Oil City argues the letter raises more issues of fact.

To maintain a cause of action for breach of contract the plaintiff must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." **Gorski v. Smith**, 812 A.2d 683, 692 (Pa.Super. 2002).

Here, the  trial court found summary judgment appropriate on the breach of contract claim because Oil City did not establish a contractual relationship with Amalgamated. Trial Ct. Op. at 7-12. It discussed **Lockhart**, where the plaintiff brought claims against Federal Insurance and Chubb & Son, Inc for failure to pay a claim under renter's insurance. **Id.** at 7-8. There, the

insurance policy named Federal as the company issuing the policy. **Lockhart**, 1998 WL 151019, at *1. Federal denied coverage, but the letter denying the claim was on Chubb letterhead. **Id.** at *3. The plaintiff sued both Federal and Chubb. The United States District Court for the Eastern District of Pennsylvania concluded Chubb was not a party to the contract. **Id.** It reasoned the policy identified Federal as the insurer and Chubb was not mentioned in the terms of the contract. **Id.** The court noted that the plaintiff did not inquire in discovery about the relationship between Chubb and Federal and did not allege an alter ego theory. **Id.**

The trial court here found that, like the plaintiff in **Lockhart**, Oil City did not provide evidence naming Amalgamated as an insurer under the policy, and no document identified Amalgamated as the provider. Trial Ct. Op. at 9. The court stated that "[w]ithout a copy of the policy at issue, the [c]ourt is left without any direct evidence to verify that [Oil City] was insured or that [Amalgamated] was an insurance carrier under that policy." **Id.**

The court further reviewed the documents that Oil City claimed demonstrated a material fact as to whether an insurance contract existed between the parties. It found that the documents did not create an inference that Amalgamated was the insurance provider. **Id.** It reasoned the document entitled "Evidence of Commercial Property Insurance" specifically stated it was not a contract between the issuing insurers, authorized representative, or producer and the additional interest, and it named Amalgamated as the producer, not insurer. **Id.** at 9-10. The court found the document entitled

- 12 -

Hospitality Program-Binding Requirements, which was on Amalgamated letterhead, did not tend to prove an insurance contract between the parties existed. *Id.* at 10. It reasoned that the letterhead did not mean Amalgamated was a party to the contract. It observed that the document merely listed Oil City's name with terms, did not set forth the necessary terms of an insurance contract, and was a non-dated, non-binding application for insurance. *Id.* Further, the document entitled "Hospitality Supplemental," also on Amalgamated letterhead, contained Oil City's information regarding the location to be insured and was part of the application. *Id.* The court pointed out that Amalgamated's claim manager testified that the Master Policy was a document notifying potential insureds of the kind of coverage they can receive and was not a policy. *Id.* at 10-11. The court also noted the Master Policy contained standard language indicating it did not create a contract, did not list Amalgamated as the insurer, and listed Amalgamated Hospitality Management II, LLC as the insured. *Id.* at 11. The court also discussed the letter McLarens sent in April 2021 wherein McLarens referenced Oil City's policy, the insurance providers for the policy, and the provision of the policy that excluded coverage. *Id.* The court noted Amalgamated was not listed as an insurance carrier. *Id.*

The court concluded Oil City did not produce any evidence to indicate a contract had been formed between the parties, any evidence that Oil City's premium payments were made to Amalgamated, any correspondence between the parties during the coverage term, or any documentation that

Amalgamated was involved in the claim. *Id.* at 11-12. It found it could not conclude "that [Amalgamated] was a party to the policy, was in a contractual relationship with [Oil City,] or that the terms of an insurance policy were established." *Id.* at 12. It found Oil City failed to show a genuine issue of material fact. *Id.*

We agree with the trial court. The record here supports the court's finding that there is no genuine issue of material fact. There is no evidence that Oil City entered into an insurance contract with Amalgamated as the insurer. There is no insurance policy in the record and no document naming Amalgamated as the insurer. The documents show Amalgamated assisted in the application process, but do not demonstrate that Amalgamated was the insurance company under the policy. Discovery was complete, and Oil City failed to establish any contract existed between the parties.

Oil City next claims the court erred in granting summary judgment to Amalgamated on the bad faith claim. Section 8371 governs insurance bad faith claims and provides that if the court finds an insurer acted in bad faith, it can award certain damages:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

"[A]n action for bad faith under 42 Pa.C.S.A. § 8371 can only be brought against an 'insurer.'" **Brown v. Progressive Ins. Co.**, 860 A.2d 493, 498 (Pa.Super. 2004).[5] The determination of who is the insurer for a bad faith claim is a question of fact, "to be determined both by examining the policy documents themselves, and by considering the actions of the company involved." **Id.** Courts consider two factors: "(1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as an insurer." **Id.** In **Brown**, we stated the second factor was "significantly more important than the first factor, because it focuses on the true actions of the parties rather than the vagaries of corporate structure and ownership." **Id.** at 498-99.

Oil City maintains the trial court erred in finding that Amalgamated did not qualify as an insurer under the statute. It argues the bad faith statute does not define "insurer," and we therefore should look to Section 221.3, which defines "insurer" to be "any person who is doing, has done, purports to do, or is licensed to do an insurance business" and defines "doing business" to include "the solicitation of applications for [insurance] contracts, or other negotiations preliminary to the execution of such contracts." Oil City's Br. at

---

[5] In **Brown**, we noted that "[t]he Judicial Code does not define 'insurer[,]'" and looked to the Insurance Department Act of 1921, which defined "insurer" as "any person who is doing, has done, purports to do, or is licensed to do an insurance business and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization or conservation by any insurance commissioner." **Brown**, 860 A.3d at 498 (citations omitted).

45 (quoting 40 P.S. § 221.3) (emphasis removed; alteration in original). It argues that Amalgamated at the very least solicited an insurance application, conducted an inspection of Oil City's property after receiving the application, and conducted negotiations that led to Oil City obtaining a policy of insurance. Oil City argues the trial court erred in failing to consider the effect of the preliminary dealings, which formed the basis for Oil City's belief that Amalgamated was the insurer, as inconsistent with the statute's text.

Oil City also argues that the court erred when it rejected the existence of clear disputes of fact as to the statutory bad faith claim. It argues that to reach the conclusion that the record had nothing to indicate Amalgamated was an insurer under the contract for bad faith purposes, the court had to ignore documents related to the policy, including the application materials. It further argues that the policy documents shared with Oil City do not name any entities that Amalgamated now claims are the insurers. It argues the first **Brown** factor favors Oil City because the only company listed in any of the policy documents was Amalgamated. It maintains that for trial court's conclusion on the second factor—that Amalgamated did not take any actions toward Oil City's policy that indicate it was the insurer—the court ignored the actions Amalgamated took to suggest it was the insurer. It further claims that if Amalgamated did not act as the insurer, than no one did. It maintains Amalgamated was the only insurance company that communicated with Oil

City. It maintains the McLarens took actions only because Amalgamated retained it to do so.[6]

The trial court concluded there was no genuine issue of material fact as to the bad faith claim. Trial Ct. Op. at 16. It noted that a bad faith claim arises because an insurance company has a fiduciary duty to act on the behalf of the insured and, without an underlying agreement defining the terms and the fiduciary duty, a bad faith claim cannot exist. ***Id.*** at 13.

The court reviewed ***Brown***, where the court found Progressive could be liable for a bad faith claim even though it was not the listed insurer. ***Id.*** at 13-14. For the first factor, the Court in ***Brown*** pointed out Progressive's name appeared on the documents setting forth the contract's terms and was listed in the upper right hand corner of the declarations page in more prominent font than the other defendant as well as other prominent locations on the documents. 860 A.2d at 499. For the second factor, the court found that Progressive handled the medical payments and lost wage clams, approved the third-party settlement, waived its subrogation rights, and handled all aspects of the underinsured motorist claim. ***Id.*** at 500.

_____

[6] Oil City further argues that Amalgamated could have raised the argument that it was not an insurance company after receiving the complaint, but instead responded to the complaint with policy-based defenses and litigated it until the limitations period expired, when it moved for summary judgment. We note that in the Answer, Amalgamated denied issuing the policy and stated it did not make any determination regarding coverage. Answer at ¶ 3; New Matter at 18. Further, in its response to interrogatories, Amalgamated stated "Amalgamated does not insure Plaintiff's property as Amalgamated is not an insurance carrier." Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. at Ex. 16, at 5, ¶ 5.

The trial court distinguished the current case from **Brown**. It noted Amalgamated's name does not appear in the documents setting forth the contract's terms, and it could not review the insurance contract because it was not part of the record. It also pointed out that Amalgamated is not listed with the other insurers in the denial letter, and its information does not appear on any policy documents. Trial Ct. Op. at 14-15. The court noted that Oil City claims Amalgamated refused to provide the policy documents, but that Amalgamated repeatedly claimed it did not have the documents because it was not the carrier. **Id.** at 15. The court pointed out that Oil City did not seek relief or enforcement by the court regarding the claim that Amalgamated failed to turn over requested documentation. **Id.** The court further noted that Oil City consented to proceeding on the current record, as at the July 2025 hearing they stated they no longer desired to proceed with third-party subpoenas. **Id.**

The trial court also found Amalgamated did not act like Oil City's insurer. It emphasized that it did not take any action toward the policy that indicated it was the insurer – it did not issue the policy, adjust the claim, or deny the claim. **Id.** The court stated Amalgamated's only action was to forward the claim to the McLarens, who adjusted the claim. **Id.**

We conclude the court did not err in entering summary judgment on the bad faith claim. There are no policy documents identifying Amalgamated as the insurer and the evidence does not show that Amalgamated acted as the insurer. That Amalgamated assisted in the application process and forwarded

- 18 -

claims to the insurer does not equate to acting as an insurer. There were no genuine issues of material fact, and this claim lacks merit.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  6/15/2026